## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JAMES MARTIN L'ESPERANCE**, as
Personal Representative of the Estate of
**LYDELL L'ESPERANCE**, deceased,

      Plaintiffs,

    vs.                               No**.**   **CIV-02-0258 MCA/RLP**

**JOHN MINGS**, individually, and in
his official capacity as an Albuquerque
Police Department Officer and the
**CITY OF ALBUQUERQUE**,
a municipal corporation,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

    **THIS MATTER** comes before the Court on the following motions:  (1) Defendant

Mings' ***Motion in Limine No. II:  The Exclusion of Plaintiffs' Police Procedures Expert***

***Based on His Failure to Meet the Standards Set Forth in <u>Daubert v. Merrell Dow</u>***

***<u>Pharmaceuticals, Inc.,</u> 509 U.S. 579 (1993)*** [Doc. No. 53] filed on March 28, 2003; (2)

Plaintiff's ***Motion in Limine to Preclude Expert Testimony and Request a Daubert***

***Hearing*** [Doc. No. 65] filed on April 28, 2003; (3) Plaintiff's ***Second Motion in Limine to***

***Preclude Expert Testimony and Request for a Daubert Hearing*** [Doc. No. 82] filed on June

11, 2003; and (4) Plaintiff's oral request at the hearings on July 14, 2003, to reconsider some

of its prior rulings in the *Memorandum Opinion and Order* [Doc. No. 132] filed on July 11,

2003.  The Court held a hearing on the above motions on July 14, 2003.  Having considered

the submissions of the parties, the relevant law, and otherwise being fully advised in the

premises, the Court finds that the motions filed on March 28, 2003, and April 28, 2003,

[Doc. No. 53, 65] are well taken and that the proposed expert testimony on police procedures

must be excluded from trial because it is inadmissible under Fed. R. Evid. 403 and 702.  The

motion filed on June 11, 2003, [Doc. No. 82] is denied as moot based on defense counsel's

representation that the testimony regarding bullet trajectory, *i.e.*, the fact that the bullet fired

from Defendant Mings' gun traveled in a straight line, will be presented by another witness.

Finally, the Court has reconsidered its prior rulings in the *Memorandum Opinion and Order*

[Doc. No. 132] as requested by Plaintiff's counsel, and the Court determines that those prior

rulings shall remain in place except as clarified herein.

## I.    BACKGROUND

Pursuant to the *Memorandum Opinion and Order* [Doc. No. 85] filed on June 18,

2003, the only claims that remain pending against Defendant Mings in this matter are

Plaintiff's state-law claim of battery and the claim under 42 U.S.C. § 1983 that Defendant

Mings used excessive force in violation of the Fourth and Fourteenth Amendments to the

United States Constitution.  Plaintiff also has a pending state-law claim against Defendant

City of Albuquerque on the theory of *respondeat superior* liability for Defendant Mings'

alleged battery.  All of the above claims arise from the events of November 19, 2001, when

Defendant Mings shot and killed Plaintiff's decedent, Lydell L'Esperance.  The Court

specifically notes that there is no negligence claim pending against the Defendants.

The *Pretrial Order* [Doc. No. 75] filed on May 23, 2003, indicates that Plaintiff may call Mr. Lou Reiter to testify at trial as a police-procedures expert and state his opinions regarding the conduct of Defendant Mings in this case.  The *Pretrial Order* also indicates that Defendant Mings may call Mr. David M. Grossi to testify at trial as a police-procedures expert regarding "the topic of police procedures/use of force."  Neither of these witnesses is listed in the *Pretrial Order* as an expert in any field other than police procedures.

Mr. Grossi and Mr. Reiter have each been deposed and have each filed expert reports pursuant to Fed. R. Civ. P. 26(a)(2).  Copies of the these experts' reports and excerpts of their deposition testimony are attached to the parties' briefs regarding the above motions. The Court has considered these materials in making its determination as to the admissibility of their expert testimony, and the parties agreed at the telephonic hearing on July 14, 2003, that it is not necessary for the Court to hear additional evidence in order to perform its gatekeeping function under Daubert.

According to their reports and deposition testimony, both parties' experts appear to rely primarily on a "use of force" model that is commonly used in training police officers on the appropriate use of force.  The "use of force" model employed by Plaintiff's police-procedures expert contains a distinctive element of "preclusion" that appears to place particular emphasis on whether less intrusive alternatives are available.  Plaintiff's police-procedures expert also has developed his own model for dealing with emotionally-disturbed persons called "CCCT," which is an acronym for "coordination, containment, communication, and time."  At the telephonic hearing on July 14, 2003, Plaintiff's counsel

indicated that Mr. Reiter also may be called to testify as to standards for determining how close a suspect approaching an officer with an edged weapon must come before the officer is entitled to use deadly force.

Defendant Mings asserts that the proposed testimony of Plaintiff's police-procedures expert, Mr. Reiter, is inadmissible because "evidence regarding violations of police procedures and training and less intrusive alternatives is not relevant" to Plaintiff's claims and presents a "danger of juror confusion [that] substantially outweighs its probative value." (Deft. Mings' Mot. at 2.) Defendant Mings further asserts that Mr. Reiter's "opinions consist of inadmissible legal conclusions and comments on the credibility of witnesses." (Id.) Plaintiff, in turn, asserts that the proposed testimony of Defendant Mings' police-procedures expert, Mr. Grossi, is inadmissible because Mr. Grossi "impermissibly attempts to define the legal parameters within which the jury must exercise its fact-finding function" and "impermissibly renders opinions concerning the credibility of witnesses, about matters outside his area of knowledge and expertise including ballistics testimony, and even about what was in the mind of Lydell L'Esperance." (Pltf.'s Mot. at 2.)

## II.   ANALYSIS

Fed. R. Evid. 702 imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as

well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function. See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000).

In this case, the focus of the Court's inquiry is on whether the parties' proposed expert testimony on police procedures is relevant under the legal standard that the Court is required to apply in excessive-force cases. As explained in the *Memorandum Opinion and Order* [Doc. No. 132] filed on July 11, 2003, the Court has ruled that evidence concerning standard operating procedures, training, and less intrusive alternatives is not admissible in this case. For the following reasons, expert testimony on these issues is also inadmissible, and Plaintiff's counsel has not identified sufficient grounds for reconsidering the Court' prior rulings.

At the telephonic hearing on July 14, 2003, Plaintiff's counsel did not present any additional legal authority for admitting evidence of standard operating procedures, training, or less-intrusive alternatives in this case. Rather, Plaintiff's counsel simply asserted that, without reference to these types of evidence, the jury will be left with no standards for determining whether Defendant Mings' use of force was unreasonable or excessive. Plaintiff's assertion is incorrect.

This is not a negligence case involving an issue such as medical malpractice, where expert testimony is almost always necessary to define the standard of care applicable to the alleged tortfeasor.  Rather, the standard for determining whether Defendant Mings' use of force was unreasonable or excessive is defined by the interpretation of the Fourth Amendment provided by the Supreme Court and the Tenth Circuit.  The jury will be informed of the relevant legal standard by means of the Court's jury instructions, and Plaintiff's counsel may refer to those jury instructions in his closing argument.

In particular, Plaintiff's excessive-force claim under 42 U.S.C. § 1983 must be analyzed under the Fourth Amendment standard of "objective reasonableness" as articulated by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989).  The reasonableness of Defendant Mings' conduct also is central to Plaintiff's battery claim under state law, because the intentional application of force to another person does not constitute battery unless it is unlawful, see N.M.Stat. Ann. § 30-3-4 (Miche 1978); Caillouette v. Hercules, Inc., 113 N.M. 492, 496-97, 827 P.2d 1306, 1310-11 (Ct. App. 1992), and police officers are not liable for battery if they acted in good faith and did not use more force than reasonably necessary to preserve the peace or effect an arrest, see State v. Gonzales, 97 N.M. 607, 610, 642 P.2d 210, 213 (Ct. App. 1982); Mead v. O'Connor, 66 N.M. 170, 173, 344 P.2d 478, 479-80  (1959).

Expert testimony on police procedures may be relevant and admissible with respect to the related issue of whether a municipality is liable for failing to properly train or supervise an officer with respect to the use of force.  See Zuchel v. City and County of Denver, 997 F.2d 730, 742 (10th Cir. 1993).  In particular, it is possible that the "use of

force" and "CCCT" models, on which the parties' police-procedures experts base their opinions, may be useful in determining whether a municipality's standard operating procedures and training regimen are in compliance with nationally accepted standards, or whether less intrusive alternatives to deadly force are available in a given situation.

But such testimony and the models on which it is based are not necessarily relevant and admissible with respect to the reasonableness of the officer's conduct itself, particularly where, as here, the officer's interaction with the victim of the shooting takes place in a matter of seconds rather than minutes or hours.  See Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001); Romero v. Bd. of County Comm'rs., 60 F.3d 702, 705 (10th Cir. 1995); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194 (2001); Marquez v. City of Albuquerque, Civ. No. 01-445 WWD/LFG, slip. op. at 2-3 (D.N.M. Sept. 24, 2002).  "The reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer 'may be forced to make split-second judgments' under stressful and dangerous conditions."  Medina, 252 F.3d at 1131 (10th Cir. 2001) (quoting Graham, 490 U.S. at 396-97).

The fact that an officer did not comply with his or her employer's standard operating procedures and training, or did not use a less intrusive alternative means of detaining or disarming a suspect, does not necessarily mean that the officer's conduct was "unreasonable" under the Fourth Amendment.  See id. at 1133; Romero, 60 F.3d at 705; Wilson, 52 F.3d at 1554.  Thus, a party may not use evidence of standard operating procedures, training, or less

intrusive alternatives in order to supplant the legal standard of objective reasonableness that has been defined by the Supreme Court and the Tenth Circuit and is reflected in the Court's jury instructions.

In this case, there is no pending claim against Defendant City of Albuquerque for improper training or supervision.   Rather, the only remaining claims concern the reasonableness of Defendant Mings' use of force.  For these reasons, as well as those previously stated on the record and in the *Memorandum Opinion and Order* [Doc. No. 132] filed on July 11, 2003, expert testimony on whether Defendant Mings or another officer violated standard police procedures or did not use the least intrusive means available is not likely to assist the trier of fact to understand the evidence or determine a fact in issue, and any marginal relevance of such testimony to the pending claims in this case is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. See Marquez, Civ. No. 01-445 WWD/LFG, slip. op. at 2-3.  It follows that such testimony is not admissible under Fed. R. Evid. 702 or 403.

The Court further concludes that the "use of force" and "CCCT" models on which the parties' police-procedures experts base their opinions will not assist the jury in understanding the evidence or determining a fact in issue in this case.  As noted above, these models essentially codify or duplicate the analysis of less intrusive alternatives and provide a basis for determining whether a given procedure or training regimen is in compliance with nationally accepted standards. In this case, however, standard operating procedures, training, and less intrusive alternatives are not at issue under the applicable law, and the parties do not

explain how testimony concerning these models will assist the jury in determining other facts which *are* at issue.

The determination of whether Defendant Mings' use of force was excessive is heavily fact-dependent. In this regard, the Court notes that the parties' arguments appear to present at least four versions of how the shooting occurred (Plaintiff's version and three versions attributed to Defendants). The parties arguments, however, do not demonstrate how expert testimony concerning police procedures, or reference to the "use of force" or "CCCT" models, will assist the jury in determining which of these versions is correct or deciding what happened during the incident that resulted in the death of Lydell L'Esperance.

Expert witnesses may not usurp the jury's factfinding role in determining whether the applicable legal standard has been met in this case, see United States v. Adams, 271 F.3d 1236, 1245-46 (10th Cir. 2001), nor may such witnesses usurp the Court's role in instructing the jury on what that legal standard is, see Specht v. Jensen, 853 F.2d 805, 807-09 (10th Cir. 1988). Because expert testimony on issues of witness credibility or areas of law covered by the Court's jury instructions is of little or no relevance in this case and raises a substantial danger of unfair prejudice, confusion of the issues, or misleading the jury, see Fed. R. Evid. 403, the parties' police-procedures experts may not testify as to which version of events set forth by the fact witnesses is more credible, nor may such experts be permitted to define the legal parameters of "objective reasonableness" for the jury.

According to the *Pretrial Order*, Mr. Grossi and Mr. Reiter are only designated as experts in the field of police procedures. They are not designated as experts in any other

field, such as psychology, ballistics, or crime-scene reconstruction.  Rather, the parties have

designated other witnesses to testify as to some of these areas.

Under this procedural posture, the parties have failed to demonstrate why their police-

procedures experts should be permitted to testify about the state of mind of Defendant Mings

or the decedent.  These experts are not psychologists, and there is no showing that their

expertise in police procedures provides them with a reliable and relevant basis for opining

about a person's state of mind.  Further, "[t]he subjective intentions or state of mind of either

the [criminal] defendant or police is irrelevant to Fourth Amendment analysis."  United

States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996).  The issue of whether the officer acted

in good faith is only relevant to the battery claim under state law, see Gonzales, 97 N.M. at

610, 642 P.2d at 213, and possibly the issue of whether grounds exist for awarding punitive

damages, see generally Smith v. Wade, 461 U.S. 30 (1983).[1]  Given the limited relevance of

this issue and the absence of any reliable showing of how police procedures have a bearing

on a person's state of mind, the Court determines that Mr. Grossi and Mr. Reiter will not be

permitted to testify as to whether Defendant Mings acted in good faith or what the decedent's

state of mind was at the time of the shooting.  See Fed. R. Evid. 403, 702.

The Court next addresses whether Defendant's police-procedures expert, Mr. Grossi,

should be permitted to testify about the trajectory of the bullet fired from Defendant Mings'

---

[1]The Court has entered an *Order* bifurcating the trial of this case.  Under that *Order*, the issue of whether there is sufficient evidence to submit the question of punitive damages to the jury will not be addressed until the second phase of the trial.

gun.  Plaintiff's *Second Motion in Limine to Preclude Expert Testimony and Request for a Daubert Hearing* [Doc. No. 82] seeks to limit Mr. Grossi's testimony to the field of police procedures on the grounds that he was not designated as an expert in any other field.  In response to Plaintiff's motion on this issue, defense counsel indicated that Mr. Grossi will not testify about ballistics or criminalistics matters.  At the telephonic hearing on July 14, 2003, defense counsel further represented that it will not be necessary for Mr. Grossi to testify about bullet trajectory, (*i.e.*, that the bullet fired from Defendant Mings' gun traveled in a straight line to its point of entry), because another witness will so testify.  Plaintiff's counsel indicated that he has no objection to such limited testimony on bullet trajectory.  The Court determines that Plaintiff's *Second Motion in Limine to Preclude Expert Testimony and Request for a Daubert Hearing* [Doc. No. 82] is now moot.

Finally, with regard to Plaintiff's oral request at the end of the hearing on July 14, 2003, that the Court reconsider its prior ruling on Plaintiff's third motion in limine [Doc. No. 93], the Court notes that certain defense exhibits concerning events in the L'Esperance household prior to the shooting have been excluded from the liability phase of the trial.  In addition, the Court has indicated that the exhibits regarding Cheryl L'Esperance's 911 call may only be admitted if Cheryl L'Esperance appears as a witness and the exhibits are used for impeachment.  Nevertheless, as stated in the *Memorandum Opinion and Order* [Doc. No. 132] and on the record at the call of the calendar on July 10, 2003, the Court is not prepared at this juncture to entirely rule out all reference to events occurring on November 18 and 19. In addition, the Court concludes that Fed. R. Evid. 403 does not require the exclusion of this

-11-

entire category of evidence.  Therefore, the Court's prior ruling on this issue stands, except as clarified by the Court's rulings on the admissibility of exhibits, and subject to such timely and specific objections as are raised at trial.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that the proposed expert testimony on police procedures is inadmissible in this case because it will not assist the trier of fact to understand the evidence or determine a fact in issue, and because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  In addition, the parties police-procedures experts (Mr. Grossi and Mr. Reiter) will not be permitted to testify as experts in any other field.

**IT IS, THEREFORE, ORDERED** that Defendant Mings' *Motion in Limine No. II: The Exclusion of Plaintiffs' Police Procedures Expert Based on His Failure to Meet the Standards Set Forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)* [Doc. No. 53] is **GRANTED** under the conditions specified herein.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion in Limine to Preclude Expert Testimony and Request a Daubert Hearing* [Doc. No. 65] is **GRANTED** under the conditions specified herein.

**IT IS FURTHER ORDERED** that Plaintiff's *Second Motion in Limine to Preclude Expert Testimony and Request for a Daubert Hearing* [Doc. No. 82] is **DENIED AS MOOT** for the reasons specified herein.

**IT IS FURTHER ORDERED** that the Court's prior rulings in the *Memorandum Opinion and Order* [Doc. No. 132] filed on July 11, 2003, shall remain in effect as clarified herein.

**SO ORDERED**, this 14th day of July, 2003, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*